BOLINGBROOK PARK DISTRICT, Plaintiff-Appellant, *v.* NATIONAL-BEN FRANKLIN INSURANCE COMPANY OF ILLINOIS *et al.*, Defendants-Appellees.

Third District    No. 80-366

Opinion filed April 29, 1981.—Rehearing denied June 3, 1981.

Barry L. Moss, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

John D. Purdy, Jr., Charles L. Siemon, and David Hejna, all of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellees.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

This appeal involves a dispute between parties to a construction contract. The Bolingbrook Park District (hereinafter referred to as the Park District) brought suit for breach of contract against the defendants, John D. Gotta, and William Kapustka, individually and doing business as J. D. Gotta and Associates (hereinafter referred to as the Contractor). National-Ben Franklin Insurance Company was surety for the Contractor's bonds and was sued by the Park District in that capacity. The trial court granted defendants' motions to dismiss the complaint. It found all the issues alleged in the complaint clearly within the scope of the arbitration clause of the contract; arbitration was ordered. The Park District now appeals that ruling.

The Park District and the Contractor executed a contract on September 17, 1976, under which the Contractor was to construct a handball/racquetball facility. Certain provisions of the contract require arbitration of any disputes arising thereunder. The arbitration clause reads as follows:

"6.10 ARBITRATION

6.10.1 All claims disputes and other matters in question arising out

of, or relating to, this Contract or the breach thereof, except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 8.7.5 and 8.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

6.10.2 Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Park District.

6.10.3 The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Park District in writing."

The date for completion of the project under the contract terms was March 1, 1977. The facility was constructed but a dispute arose concerning performance of the terms of the contract. On May 20, 1977, the Park District terminated the contract alleging default and substantial violations of the contract by the Contractor.

On June 28, 1977, the Contractor filed a notice of demand for arbitration seeking money due under the contract and damages for wrongful termination of contract by the Park District.

On August 9, 1977, the Park District filed a suit in Will County Circuit Court to recover damages against the Contractor and the surety for breach of contract. The Contractor responded with a motion to dismiss based on the theory the contract's arbitration clause covered the matters in issue and an arbitration proceeding was already pending. The surety subsequently filed a motion to dismiss on the same grounds.

By letter dated April 16, 1979, the Contractor made a proposal to the Park District. The Contractor agreed to withdraw its arbitration demand and proceed in a judicial forum with their contract disputes if the Park District released the balance of a certain escrow account and paid additional damages. The Park District found these terms unacceptable; they so notified the Contractor by letter dated April 24, 1979. On November 2, 1979, the Park District informed the American Arbitration Association that the Contractor's letter of April 16, 1979, made it clear that Contractor had withdrawn its arbitration demand and would proceed in the pending lawsuit in Will County.

On July 2, 1980, the trial court granted the motions to dismiss the complaint. The issues presented in the complaint were ordered to arbitration.

■■■ The Park District presents five issues for review. Initially, the Park District asserts that the Contractor by its letter of April 16, 1979, agreed to submit the dispute to a judicial forum and waived its right to arbitrate the matters in dispute. We agree that the parties may mutually agree to forego arbitration. However, such was not the case here. The trial court found the letter of April 16, 1979, was an offer to withdraw the arbitration demand if the Park District would release certain escrow funds and pay damages. The trial court was correct. The letter of April 16, 1979, is clearly conditional in its terms. The conditions of the offer were unacceptable to the Park District. They so advised the Contractor by letter dated April 24, 1979. Thus, no mutual agreement was reached. The Contractor remained free to pursue its claim for arbitration. The Contractor never withdrew its arbitration demand filed on June 28, 1977, and proceeded with its pending motion to dismiss the Park District's complaint in circuit court.

Secondly, the Park District claims the trial court erred in granting the surety's motion to dismiss. That motion, like the Contractor's, was based on the arbitration clause in the underlying contract between the Park District and the Contractor. The Park District argues that the surety was not in privity of contract with the underlying contract and its arbitration provision.

■■ It is fundamental that a surety's liability is limited by the terms of the suretyship agreement. When the bond incorporates the contract by reference, as in the instant case, the provisions of the contract become the provisions of the bond. (*Lake View Trust & Savings Bank v. Filmore Construction Co.* (1979), 74 Ill. App. 3d 755.) The two bonds which comprise the subject suretyship agreements both expressly incorporate by reference all terms of the underlying contract by the following language:

"WHEREAS, (General) Contractor has by written agreement dated September 17, 1976 entered into a contract with Owner (Park District) for Racquetball Court—Project B.P.D.,—R.H.B. in accordance with drawings and specifications prepared by [left blank by the parties] which contract is by reference made a part hereof, and is hereinafter referred to as the Contract."

Thus, in entering the suretyship agreement, the Park District and the surety agreed to include the terms of the underlying contract between the Park District and the Contractor. This underlying contract provided for arbitration of all disputes and claims. It follows, therefore, the Surety has standing to assert any term of the underlying contract including arbitration as the basis for its motion to dismiss the Park District's complaint.

The Park District next alleges that certain of the claims in the Contractor's demand for arbitration exceed the scope of the contract's arbitration clause. The Park District expends considerable time in its brief arguing the merit of this allegation. However, such argument is irrelevant to the issue before us. Under scrutiny is the Park District's complaint filed in circuit court; the issue is whether the claims therein are within the scope of the arbitration clause. The claims of the Contractor in its demand for arbitration are irrelevant in our review of the dismissal of the Park District's complaint.

The fourth allegation of the Park District is that the arbitration provision of the contract became inoperable upon the Park District's notice of termination to the Contractor. The Park District cites the following portion of the contract:

> "6.10.3 The contractor shall carry on the work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner [Park District] in writing."

Interpreting this clause with the arbitration clause, the Park District maintains that the parties agreed to "submit all claims and disputes arising out of the contract or the breach thereof" *as long as* "the Contractor shall carry on the work and maintain the progress schedule during any arbitration proceedings * * *."

Such a convoluted construction is without merit. Paragraph 6.10.3 merely requires the continuation of work, if there be any, while arbitration is pending. It does not mandate work as a condition to arbitration. We find no terms in this contract abrogating the right to arbitrate upon completion or termination of the work. Furthermore, termination is usually a unilateral act. If we accept the Park District's interpretation, one party would have the power to deprive the other of their right to arbitrate. This we will not do.

The contract provides that making and accepting final payment constitutes a waiver of all but several categories of claims. However, the record is devoid of any evidence of final payment. Thus we find the contract and its arbitration clause operative at the time the Park District terminated the Contractor as well as when it filed this lawsuit.

■■ Finally, the Park District argues that the claims presented by the Contractor, if allowed by the arbitrator, would be an illegal delegation of the duty of the Park District to manage its budget and appropriations.

Such an allegation is unsound. The legal principle of nondelegability of fiscal management is remote to the instant appeal. The claims submitted by the Contractor are limited to the rights and duties of the parties arising out of their contract. Thus, the arbitrator's power is restricted to interpreting and ultimately enforcing the parties' agreement as evidenced by the terms of the contract. Naturally, as a result, the Park District might

be ordered to pay money to the Contractor, or the converse. The arbitration provision is a material term of the contract. The Park District, as a party to the contract, bargained for this method of dispute resolution. It must now abide by the arbitrator's decision. It is preposterous for the Park District to seriously contend that an adverse ruling amounts to an unlawful delegation to the arbitrator of the Park District Board's duty of appropriating funds.

Even if that argument had merit, and it does not, it is not dispositive of the cause before this court. The issue before us is the proper forum for the resolution of the Park District's claims; should they be submitted to arbitration pursuant to the contract as ordered by the trial court? For us to analyze the composition of the Contractor's claims at this time is inappropriate and violative of the arbitration agreement.

For the foregoing reasons, we find that the Circuit Court of Will County was correct in dismissing the Park District's complaint and ordering the claims alleged therein to arbitration.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.